[Criminal No. 137. Filed March 28, 1900.]

[60 Pac. 876.]

WILLIAM HALDERMAN et al., Defendants and Appellants, v. TERRITORY OF ARIZONA, Plaintiff and Respondent.

1. CRIMINAL LAW—CONTINUANCE—AFFIDAVITS—COUNTER AFFIDAVITS.— Where defendants filed affidavits for a continuance on the ground that an absent witness, if present at the trial, would testify that deceased had threatened during a quarrel to take defendant's life, and that the whereabouts of said witness was unknown, but that defendant believed that said witness could be secured at a subsequent term of court if such continuance were granted, it was not error to permit the filing of counter affidavits by the prosecution tending to show that the witness had left ·the neighborhood prior to the quarrel, had never returned, and could not have heard the threats.

2. SAME—SAME—GRANTING OF—DISCRETIONARY.—The granting of a continuance for the purpose of securing the attendance of absent witnesses rests in the sound discretion of the court, and a denial would be justifiable if there was no showing made that the attendance of the witness could be procured at any subsequent date to which the trial could be postponed, or if, from counter affidavits, there was no good reason for believing that the witness would, if present, testify to the facts set forth in the affidavits for continuance.

3. SAME—MURDER—EYE-WITNESS—PROSECUTION NOT BOUND TO SUMMONS.—It is not error for the court upon a murder trial to refuse to compel the prosecution to call an eye-witness of the killing, as it is in the province of the prosecuting officer, and not of the court, to determine what witnesses shall be called in support of the charge against the defendant.

4. SAME — SAME — INSTRUCTIONS TO JURY — BURDEN OF PROOF—PAR. 1655, PEN. CODE, REV. STATS. ARIZ. 1887, CITED—FOSTER v. TERRITORY, 6 ARIZ. 240, 56 PAC. 738, FOLLOWED.—The statute, *supra*,

provides: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." *Held,* an instruction given in the exact language of this section was not error.

5. SAME—SAME—SAME—PAR. 1655, PEN. CODE, REV. STATS. ARIZ. 1887. —The instruction that "where it is shown that a homicide has been committed with a deadly weapon, and no circumstance of mitigation, justification, or excuse appear, the law implies malice. The malice thus implied is that malice aforethought which is necessary to sustain an indictment for murder," states in different language the substance of paragraph 1655, *supra,* and aside from the statute is amply sustained by the authorities.

6. SAME—SAME—SAME—DEFENDANT A WITNESS—CREDIBILITY.—It is not error for the court to give an instruction which in general terms advises the jury that in determining the credibility of the defendant as a witness they are at liberty to take into consideration the fact of his interest in the result of his trial, and in which there is no animadversion upon the testimony which he has given in the case.

7. SAME—SAME—SAME—STATUTORY DEFINITIONS SUFFICIENT.—Where the court defined murder in the language of the statute, and gave the statutory definition of malice, it is not incumbent upon the court to supplement the statutory definition with one of his own, unless, perhaps, the defendant requests it and proffers an adequate and proper definition.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. George R. Davis, Judge. Affirmed.

The facts are stated in the opinion.

Marcus A. Smith, for Appellants.

It is the duty of honest prosecution to place on the stand every eye-witness of the homicide known to it, so that the jury may determine from *all* who saw it—not a *selected few*— what the real facts are. It is not the just province of a prosecution to secure a verdict. Its duty, like that of a judge, is to see that justice is done. Its duty is to shield the innocent and punish the guilty under due form of law. It can do neither by *selecting* its witnesses. It can do both by putting in the

witness-box *all* who saw the transaction. *Territory* v. *Hanna,* 5 Mont. 248, 5 Pac. 252.

The court charged: "On charge of murder, killing by defendant proved, the burden of proving mitigation . . . devolves on defendant," or, in other words, there is something presumed and taken by implication against the defendant. What is "presumed" by such an instruction? What is "taken by implication" in such language? *Murder* is presumed; *deliberation* is presumed; *willful killing* is presumed; *malice* is presumed; and not one of these things need be shown by the prosecution. No facts need be shown from which the jury might deduce these ingredients of murder, but only the killing need be proven; and the defendant is guilty of murder, unless he assumes a burden under which, by a preponderance of testimony, he must satisfy the jury, against *presumptions* raised, not by evidence, but by the illegal *ipse dixit* of the trial judge.

The law does not imply malice nor any other fact against the defendant. *Rush* v. *Commonwealth,* 78 Ky. 268.

In speaking of defendants' interest in the case, and commenting to their prejudice on it, the court, among other things, lays down the following as the law: "If their [the defendants'] statements be *convincing* and carry with them belief, *you have the right* to receive them and act upon them. If not [*convincing*] you have a right to reject them."

Why are the defendants selected for the judge's criticism, and why does he say of them and of no other witness that their testimony *must be convincing* before you have a right to receive it?

Chief Justice Fuller, while speaking for a unanimous court in the case of *Allison* v. *United States* (p. 399), says: "As a witness a defendant is no more to be visited with condemnation than he is to be clothed with sanctity, simply because he is under accusation, and there is no presumption of law in favor of or against his truthfulness." The court further say: "The wise and humane provision of the law that the person accused is a competent witness should not be defeated by a hostile instruction of the judge." *Allison* v. *United States,* 160 U. S. 896, 16 Sup. Ct. 252; *Hicks* v. *United States,* 150 U. S. 442, 14 Sup. Ct. 144; *Commonwealth* v. *Wright,* 107 Mass. 403; *Chambers* v. *People,* 105 Ill. 409; *Greer* v. *State,* 53 Ind.

420; *Veach* v. *State,* 56 Ind. 584, 26 Am. Rep. 44; *Buckley* v. *State,* 62 Mass. 705; *State* v. *Johnson,* 16 Nev. 36.

C. F. Ainsworth, Attorney-General, for Respondent.

The granting of continuance is a matter within the discretion of the court, and the refusal to grant a continuance will only be interfered with by an appellate court where it is plain that great prejudice has resulted to the defendant from such action. *State* v. *Rorabacher,* 19 Iowa, 154.

That the prosecution should be allowed to file counter affidavits to those in support of an application for a continuance, see *State* v. *Bevel,* 89 Iowa, 405, 56 N. W. 545; *People* v. *De Lacey,* 28 Cal. 590; *State* v. *McCoy,* 111 Mo. 517, 20 S. W. 240.

Even though a continuance asked on account of an absent witness had been wrongly refused by the lower court, the upper court would not interfere with the judgment, as it appeared clearly from the evidence that the defendant was guilty. *Cave* v. *State,* 33 Tex. Cr. 335, 26 S. W. 503.

The prosecution is not bound to place every witness on the stand; but only to place on the stand those who it thinks will make out its case. *State* v. *Martin,* 2 Ired. (N. Car.) 101; *Williford* v. *State,* 36 Tex. Cr. 414, 37 S. W. 762; *Kidwell* v. *State,* 35 Tex. Cr. 263, 33 S. W. 342; *Royens* v. *State,* 33 Tex. Cr. 143, 47 Am. St. Rep. 25, 25 S. W. 786.

That upon the proof of the homicide, the burden of proving circumstances of mitigation, etc., is upon the defendant, see Rev. Stats. Ariz., Pen. Code, sec. 1655; *United States* v. *Crow,* 3 Dak. 106, 14 N. W. 437; *State* v. *Byers,* 100 N. C. 512, 6 S. E. 420; *Sawyer* v. *People,* 91 N. Y. 667; *Gibson* v. *State,* 89 Ala. 121, 18 Am. St. Rep. 96, 8 South. 98; *Commonwealth* v. *York,* 9 Met. 93, 43 Am. Dec. 373; *Smith* v. *State,* 86 Ala. 28, 5 South. 478; *Brown* v. *State,* 83 Ala. 33, 3 Am. St. Rep. 685, 3 South. 857; *State* v. *Brooks,* 23 Mont. 146, 57 Pac. 1038.

SLOAN, J.—The appellants, William Halderman and Thomas Halderman, were jointly indicted, tried, and convicted of the murder of one Ted Moore at the June, 1899, term of the district court of Cochise County. The court, in accordance with the verdict of the jury, sentenced both defendants to be hanged. From the judgment of conviction, and

from the order overruling their motion for a new trial, the defendants bring this appeal.

It appears from the record that on April 6, 1899, a complaint was lodged before W. M. Monmonier, a justice of the peace for the precinct of Pierce, Cochise County, charging the Haldermans with having unlawfully killed cattle. A warrant of arrest was issued by the justice upon this complaint, and placed in the hands of one C. L. Ainsworth, constable of the precinct, and a deputy sheriff of the county. Ainsworth at once went to the Chiracahua Mountains, where the Haldermans live, for the purpose of serving the warrant of arrest. On his way he stopped at the house of one Smith, and asked the latter to accompany him to the home of the Haldermans. Ainsworth and Smith then went to the house of one Ted Moore, and, at the request of Ainsworth, Moore joined the party. The three then proceeded up the cañon from the home of Moore to the house of the Haldermans, and found the latter absent. They then went to the house of a neighbor by the name of Wilson, where they found the defendants. Ainsworth and Moore rode to the front of the Wilson house, dismounted from their horses, and called the Haldermans out, whereupon Ainsworth read his warrant of arrest to them. Both Haldermans expressed a willingness to go with the officer, but before starting, upon the suggestion of the latter, went into the house to get their breakfast. While they were inside, Ainsworth called to them, and told them, as they might be detained at Pierce for two or three days, to take with them such articles of wearing apparel as they might need. Soon after, the Haldermans appeared, one at each of the two front doors of the house, armed with rifles, and at once opened fire, instantly killing Ainsworth, and mortally wounding Moore. As to the facts above stated, there is no substantial conflict in the evidence. The testimony of the witness for the prosecution, supported by the dying declaration of Moore, as to the circumstances of the shooting, is to the effect that at the time the Haldermans appeared at the doors, Ainsworth and Moore were both mounted and a short distance from the house; that the Haldermans, as soon as they appeared, called to Ainsworth and Moore to hold up their hands, but, without waiting, at once fired; that Ainsworth immediately fell from his horse, shot through the heart; that Moore turned his horse, and

started off, but was shot through the bowels as he was riding away; that after the shooting the Haldermans immediately fled. The story, as told by the defendants, was, that between themselves and Moore there had existed a deadly enmity; that, after the warrant had been read, they asked the constable how they were to be taken to Pierce; that they were then told that they would have to walk down to a neighboring ranch, where there was a conveyance of some sort; that, fearing that Moore might on some pretext seek occasion on the way down to the ranch to do them harm, they concluded while in the house to take their rifles with them; that, as soon as they appeared at the front of the house, Moore pulled his gun and fired, that William Halderman at once returned the fire, and continued shooting until he had emptied his gun, and, as Moore continued to shoot, he then ran to the other door, where his brother, Thomas Halderman, stood, and, seizing the latter's gun, fired again at Moore, but by accident killed Ainsworth; that, fearing mob violence at the hands of the friends of Ainsworth, the two then left the country. The defendants were jointly indicted for the murder of Ainsworth, and also jointly indicted for the murder of Moore. Upon the latter indictment the defendants were tried and convicted. Before the trial the defendants made application for a continuance of the cause, based upon an affidavit made by one of the defendants, setting forth, in effect, that one Joseph Fisher, if present at the trial, would testify that in November, 1898, at or near the residence of the defendants, he (Fisher) was present at a quarrel between Moore and William Halderman, and heard Moore then threaten Halderman's life, and that subsequently, and before the homicide, on numerous occasions, he heard Moore make similar threats against Halderman; that the fact that Fisher would so testify was communicated to defendants' counsel immediately after the latter had been appointed by the court, and that a subpœna for Fisher was at once obtained, with an order from the judge of the court directed to the sheriff to summons Fisher out of the county, if not found therein; that the sheriff made return that the witness could not be found; that affiant last heard from Fisher about three months previous to the date of the application for continuance, and that the witness was then at Globe, Gila County, Arizona; that, if a

continuance were granted, the affiant believed he could obtain the attendance of Fisher at the trial at a subsequent term of the court. Counter affidavits were by the court permitted to be filed, tending to establish the fact that Fisher left the neighborhood where the defendants and Moore resided some time. in July, 1898, and had not returned to that vicinity since that time; and, further, tending to show that Fisher could not have been present and heard the threats as set forth in the affidavit for continuance. The motion for continuance was by the trial court denied, and this ruling is assigned as error.

The practice of permitting counter affidavits to be filed upon a motion for continuance, although permissible, is one which should be confined to narrow limits. If the testimony of a witness whose absence is made the ground for the application for continuance be shown in the affidavit to be material, the truth of it cannot be controverted. If, however, the affidavit of the absent witness setting forth the nature of the testimony which, if present at the trial, he would give cannot be had, we see no reason for the exclusion of affidavits tending to show that there is no good reason for the belief that the witness, if present, would testify to the facts set forth in the motion and accompanying affidavits. Any other rule would operate to defeat justice in any case where a desperate defendant might find it to his advantage to obtain a postponement of his trial, and might choose to risk the pains and penalties of perjury in order to obtain it. Good faith in the application should appear, and the trial court, in order to wisely and justly determine whether justice to the defendant demands a continuance, should be permitted to look into the circumstances of the case, and judge whether diligence appears, and whether there be reasonable grounds for the belief that the attendance of the witness can be procured at a subsequent date, and, if the witness were present, he would give material evidence in the cause, whether these circumstances appear by affidavits presented by the applicant or by the opposing party. We do not find the admission of the counter affidavits to have been error. Nor do we think, from a review of the whole case, that the trial judge abused his discretion in denying the continuance. What his reason may have been does not appear. It may have been that no

sufficient showing was made for the belief that the attendance of Fisher, whose whereabouts were unknown to the defendants, and could not be ascertained by the sheriff, could be procured at any subsequent date to which the trial could be postponed, or at the subsequent term of the court; or it may have been that the trial court found from the counter affidavits that there was no good reason for believing that Fisher would, if present, testify to the threats as set forth in Halderman's affidavit. Whatever may have been the trial court's reason, we cannot, from the record, find such an abuse of discretion in the refusal to grant the continuance as to warrant a reversal of the cause.

During the examination of the witnesses for the territory, it appeared that one John Wilson was present at the time and place of the killing of Moore and Ainsworth, but the prosecution did not see fit to call Wilson as a witness. At the close of the case for the territory the defense moved the court for a rule requiring the prosecution to call Wilson as one of its witnesses. The motion was denied, and this ruling is made a ground of error by counsel for defendants in his brief. Bishop, in his work on Criminal Procedure (vol. 1, par. 966c), says: "Some courts deem that a prosecuting officer ought, in murder and other like causes, to call as witnesses all who were present at the transaction, whatever be the nature of their testimony; others regard it wholly within his discretion to produce such, and such only, as he thinks best." As was pointed out in *Kidwell* v. *State*, 35 Tex. Cr. App. 264, 33 S. W. 342, the rule requiring the prosecution to put on every witness who may have been present at the killing was a most humane and just one at the time when a defendant was denied the privilege of testifying in his own behalf and of producing witnesses for his defense. Under the modern procedure in criminal causes, and under the statutes of our territory, a defendant is not only privileged to testify in his own behalf, but has a right to the compulsory process of the court to compel the attendance of witnesses whom he may desire to examine in his defense. He is thus put on an equality with the territory in preparing his defense and in producing evidence. There appears to us, therefore, no good reason for adhering to a rule of practice which is no longer of any efficacy in securing to a defendant a fair and impartial

trial, but which, on the contrary, might often operate to embarrass and injure the territory in the prosecution of crime. We therefore hold with those courts which take the modern view that it is in the province of the prosecuting officer, and not of the court, to determine what witnesses to a transaction shall be called in support of the charge against a defendant. Numerous assignments of error are made in the brief of counsel for appellants, and argued by him, based upon the giving of certain instructions by the trial court, and the rejection of others offered by the defense. The first of these is in the exact language of section 1655 of the Penal Code. This instruction, in addition to having the sanction of the statute, was approved by us in *Foster* v. *Territory,* 6 Ariz. 240, 56 Pac. 738. The following language of the court is objected to as containing error: "You are instructed that, where it is shown that a homicide has been committed with a deadly weapon, and no circumstances of mitigation, justification, or excuse appear, the law implies malice. The malice thus implied is that malice aforethought which is necessary to sustain an indictment for murder." This instruction, as we conceive, states in different language the substance of said section 1655, and, aside from the statute, is amply sustained by the authorities. Upon the subject of the credibility of witnesses, as a part of his charge, the court gave the following: "The defendants have offered themselves as witnesses in their own behalf. The statutes give to them that right, and you should consider their testimony as you would that of any other witnesses. However, in determining the credit to be given their testimony you may consider the very great interest which they must have and feel in the result of this case, and the effect which a verdict would have upon them, and determine to what extent, if at all, such interest may color their testimony or affect their credibility. If their statements be convincing, and carry with them belief in their truth, you have the right to receive and act upon them; if not, you have a right to reject them." This instruction has been repeatedly approved of by the supreme court of the state of California, and similar instructions have been passed upon and sanctioned by the courts of last resort in other states. We are cited to two cases decided by the United States supreme court as condemning this instruction. The first is that of *Hicks* v.

*United States,* 150 U. S. 442, 14 Sup. Ct. 144, 37 L. Ed. 1137. The instruction passed upon in this case was as follows (150 U. S. 452, 14 Sup. Ct. 147, 37 L. Ed. 1141) : "The defendant has gone upon the stand in this case and made his statement. You are to weigh its reasonableness, its probability, its consistency, and above all you consider it in the light of the other evidence, in the light of the other facts. If he is contradicted by other reliable facts, that goes against him, goes against his evidence. You may explain it, perhaps, on the theory of an honest mistake or a case of forgetfulness, but if there is a conflict as to material facts between his statements and the statements of the other witnesses who are telling the truth, then you would have a contradiction that would weigh against the statements of the defendant as coming from such witnesses. You are to consider his interest in this case. You are to consider his consequent motive, growing out of that interest, in passing upon the truthfulness or falsity of his statement. He is in an attitude, of course, where any of us, if so situated, would have a large interest in the result of the case; the largest, perhaps, we could have under any circumstances in life, and such an interest, consequently, as might cause us to make statements to influence a jury in passing upon our case that would not be governed by the truth. We might be led away from the truth because of our desire. Therefore it is but right, and it is your duty, to view the statements of such a witness in the light of his attitude and in the light of other evidence." The court, in condemning this instruction, used this language: "The learned judge therein suggests to the jury that there was or might be 'a conflict as to material facts between the statements of the accused and the statements of the other witnesses who are telling the truth,' and that 'then you would have a contradiction that would weigh against the statements of the defendant as coming from such witnesses.' The obvious objection to this suggestion is in its assumption that the other witnesses, whose statements contradicted those of the accused, were 'telling the truth.' " As to the other part of the instruction, the court proceeded to say: "If this were the only objectionable language contained in the charge, we might hesitate in saying that it amounted to reversible error. It is not unusual to warn juries that they should be careful in giving effect to the testimony of ac-

complices; and, perhaps, a judge cannot be considered as going out of his province in giving a similar caution as to the testimony of the accused person.'' The other case cited upon this point is that of *Allison* v. *United States,* 160 U. S. 203, 16 Sup. Ct. 252, 40 L. Ed. 395. The instruction in the latter case which was held to be erroneous read as follows: ''The defendant has gone upon the stand, and he has made his statement. See if it is in harmony with the statements of witnesses you find to be reliable. If they are not, they stand before you as contradicted. If they are, they stand before you as strengthened, as you may attach credit to the corroborating facts. In passing upon his evidence, you are necessarily to consider his interest in the result of this trial,—in the result of this case. He is related to the case more intimately than anybody else, and you are to apply the principle of the law that is laid down everywhere in all civilized countries, commanding you to look at a man's statements in the light of the interest that he has in the case. There is no odor of sanctity thrown around the statements of the defendant as a witness, as is sometimes supposed, because he is charged with crime. You are to view his statements in the light of their consistency, their reasonableness, and their probability, the same as the statements of any other witness, and you are to look at them in the light of the interest he has in the result of the case.'' The supreme court found the instruction erroneous in the following language: ''As a witness, a defendant is no more to be visited with condemnation than he is to be clothed with sanctity simply because he is under accusation, and there is no presumption of law in favor of or against his truthfulness.'' We do not find that in either of the cases cited the supreme court has directly held that an instruction contains reversible error which, in general terms, advises the jury that in determining the credibility of the defendant as a witness they are at liberty to take into consideration the fact of his interest in the result of his trial, and in which there is no animadversion upon the testimony which he has given in the case.

It is assigned as error that the court omitted to instruct the jury, in defining the crime of murder, the legal meaning of the words ''willfully,'' ''deliberately,'' ''premeditatedly,'' and ''malice aforethought.'' The court defined murder in the.

language of the statute, and gave the statutory definition of malice.  Had a proper request been presented to the trial court, containing proper definitions of these words, it would then have become our duty to determine whether this omission would constitute reversible error.  The statute defines murder, and states the distinction between murder in the first degree and murder in the second degree.  It is not incumbent upon the court to supplement the statutory definition with one of his own, unless, perhaps, the defendant requests it, and proffers an adequate and proper definition.  An examination of the entire record discloses no adequate reason for the reversal of the judgment or for a new trial.  The judgment is therefore affirmed.

Street, C. J., and Doan, J., concur.