[Criminal No. 272.   Filed April 2, 1910.]

[108 Pac. 217.]

## WILLIAM ROBERTSON, Defendant and Appellant, v. TERRITORY OF ARIZONA, Respondent.

1. CRIMINAL LAW—CHANGE OF VENUE—GROUNDS—PREJUDICE—DISCRETION.—An application for a change of venue for an alleged prejudice against defendant in the community rests largely in the discretion of the trial court.

2. SAME—INSTRUCTIONS—CREDIBILITY OF ACCUSED.—In a prosecution for homicide, the court charged that defendant had offered himself as a witness in his own behalf, as he was entitled to do, and that the jury should consider his testimony as any other witness, but that, in determining the credit to be given thereto, they should consider his very great interest in the result, the effect of a verdict on him, and determine how far, if at all, such interest might color his testimony; that, if his statements carried with them belief in their truth, the jury should receive and act on them, and, if not, they might reject them. *Held*, that while such charge was not error, the instruction was undesirable, and should not be given.

3. SAME—APPEAL AND ERROR—INVITED ERROR.—Where, in a prosecution against a peace officer for homicide in killing deceased while attempting to arrest him, defendant requested an instruction that on the day in question deceased was in the actual commission of a misdemeanor in the presence of accused, which the court gave, accused could not claim on appeal that deceased was committing a felony.

4. HOMICIDE—ACTION OF PEACE OFFICER—SEPARATE TRANSACTIONS.—Where defendant, a peace officer, having been unsuccessful in his attempt to arrest deceased in the street at the time of deceased's commission of a misdemeanor, returned later armed to effect the arrest, and a conflict then occurred in which defendant shot deceased, the transaction was not continuous, and defendant's liability for the homicide depended on the circumstances surrounding the transaction at the time of the killing, rather than when decedent committed the misdemeanor.

5. SAME—EXCUSABLE HOMICIDE—ARREST—MISDEMEANOR—RIGHTS OF OFFICER.—In arresting a man for a misdemeanor, an officer may not use unnecessary bodily harm or kill the person he is arresting, even though he may escape, but it is the duty of the officer to get other persons to assist him, and later on to overcome the accused person's resistance and place him under arrest, the officer being authorized to inflict death or great bodily harm only to save his own life or to prevent great bodily harm to himself in the accused's resistance of arrest.

6. CRIMINAL LAW—INSTRUCTIONS—REVIEW AS A WHOLE.—Instructions in a criminal case must be considered as a whole.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for the County of Graham. Frederick S. Nave, Judge.    Affirmed.

The facts are stated in the opinion.

Stoneman & Jacobs, W. K. Dial and Kibbey, Bennett & Bennett, for Appellant.

John B. Wright, Attorney General, for Respondent.

KENT, C. J.—It is assigned as error that the trial court erred in not granting a motion for a change of venue because of the alleged prejudice against the defendant in the community.    This is a matter that rests largely in the discretion of the trial court.    We have examined the affidavits submitted on both sides upon the motion, and we are led to the conclusion that the trial court in denying the application for change of venue did not abuse the discretion vested in it.    *Elias* v. *Territory,* 9 Ariz. 1, 76 Pac. 605.

The second assignment of error is in relation to the following charge of the court: "The defendant has offered himself as a witness in his own behalf.    The statutes give him that right, and you should consider his testimony as you would that of any other witness.    However, in determining the credit to be given his testimony, you may consider the very great interest he must have and feel in the result of this case, and the effect which a verdict would have upon him, and determine to what extent, if any, such interest may color his testimony or affect his credibility.    If his statements be convincing and carry with them belief in their truth, you have the right to receive and act upon them.    If not, you have a right to reject them."    This charge in this precise language has been twice approved by this court.    *Halderman* v. *Territory,* 7 Ariz. 120, 60 Pac. 876; *Prior* v. *Territory* (Ariz.), 89 Pac. 412.    While the giving of this instruction was, therefore, not error on the part of the trial court, we believe that in some respects it is an undesirable instruction to be given and we recommend to the district courts that its use be discontinued.

Exception is taken to certain portions of the instructions given by the court to the jury.    A statement of the facts in

the case is necessary in order that the contention of the appellant may be made clear. On the day of the homicide there was in progress in the town of Safford, in Graham county, a celebration of the independence of the republic of Mexico. A large crowd had assembled in the town attracted by the celebration, and some of the persons participating therein had become intoxicated. One Wayne Pursley, of whose homicide the appellant was convicted, was among those in this condition. The deceased had a reputation for fighting and quarrelsomeness when drunk. He was a robust man of great strength. He had had a violent altercation with one Campbell, and was swearing and using violent and threatening language in the presence of the people. His attitude was that of a drunken disturber of the peace, threatening whosoever in any way opposed him. The appellant, Robertson, was at that time the marshal of the town of Safford. He was not a man in robust health. To him Campbell, after having been severely maltreated by the deceased, appealed for protection against further assaults by the deceased. At the time there was excitement, tumult, and disorder on the street. Appellant, responding to the appeal of Campbell, said: "I will go out and stop him—talk to him" (meaning the deceased). Appellant approached the deceased, who was demanding of the people holding him to be let loose to get at Campbell, and accosted him saying: "Here Wayne, that won't do. You can't do that. There are too many women and children on the street to be talking that way. You will have to go with me." Deceased said he would not go. Appellant then placed his hand upon the deceased, who knocked appellant down. Appellant got up, and a bystander attempted to calm the deceased, and the deceased knocked the bystander down. Appellant again took hold of the deceased and they clinched and fell, the appellant on top. The crowd then interfered, pulled the appellant off, rescued the deceased from the appellant, and took him away to a neighboring house. The appellant went to a saloon and got his revolver, and called upon a friend of the deceased to assist him, saying to him: "I have got to get him. Will you go with me?" Meanwhile the friends of the deceased had been unable to keep him in the house where they endeavored to have him remain to have the wounds that he had received in the contest with Campbell

further dressed. The deceased, however, resisted the efforts of his friends to restrain him indoors, insisting that his injury was trifling, and went on through the house and out into the yard of the house, where the appellant came up to him. The deceased was still in a violent mood. The appellant addressed the deceased as an officer, saying that the deceased must come with him, and referred to his conduct. A bystander asked that the deceased might be allowed to return to the house to have his wounds further dressed. The appellant said that he would take the deceased to the doctor or anywhere else that he wanted to go. Up to this time there is no evidence that appellant exhibited anger or made any demonstrations or threats indicative of any other purpose than to have the deceased submit quietly to his authority as an officer. The deceased said, however, that the appellant should not arrest him, and, according to some testimony, applied opprobrious epithets to him and struck at him. At this juncture the brother of the deceased interfered, and many other people of the crowd rushed in, and there was confusion. The brother of the deceased told the appellant that he should not arrest the deceased, and then the appellant pulled his gun. The brother grabbed the gun, and attempted to wrest it from the officer. In the meantime the deceased was striking at the officer with an open knife. The deceased, his brother, and the appellant were all together engaged in a struggle. The appellant struck the brother of the deceased over the head with his gun and the brother fled. The deceased was still fighting with the appellant. The appellant struck him twice over the head with the gun, but the blows did not stop the onslaught of the deceased. The officer became exhausted and fired upon the deceased, and still the deceased did not stop, and he again fired, and the deceased fell mortally wounded, and died almost instantly. The foregoing statement of facts we have summarized from the statement thereof in appellant's brief. It presents the defendant's case in the most favorable light. Many of the facts as stated are contradicted by the testimony of other witnesses, and a number of witnesses testified that at the time the fatal shot was fired the deceased was retreating and had declined further struggle; but there is evidence in the record tending to establish the facts as appellant claims they occurred.

There were several instructions requested by the defendant, all of which were given by the court, except that in one instance a sentence was stricken by the court from an instruction as requested. The court charged the jury that the indictment charged the appellant with the crime of murder alleged to have been committed upon the person of Pursley. The usual instructions were given respecting the necessity of the joint operation of act and intent, the presumption of innocence, the necessity of the territory proving all of the material allegations of the indictment beyond a reasonable doubt, defined a reasonable doubt, the province of the jury with respect to the evidence, and defined the various degrees of homicide. At the request of the defendant, the jury were also instructed that the deceased was in the actual commission of a misdemeanor in the presence of the appellant, who was at the time a peace officer, to wit, the town marshal of the town, but limited the effect as to the time of the commission of the misdemeanor to the time when the deceased was in the street, and while the incidents covered by the testimony which occurred in the street were in progress. The jury were told that it was the duty of a peace officer to enforce the law by arresting those who in his presence commit a misdemeanor or any other grade of crime; that the duties of officers with respect to arrests for misdemeanors and felonies differ; that it was not only the right, but the duty, of a peace officer to arrest a person who was committing a public offense in his presence; that in making such arrest the officer may use such force as is necessary to overcome the resistance, and may repel force with force and need not give back, and, if the offender put the peace officer's life in jeopardy, the officer may use sufficient force to overcome the resistance he encounters, even to the taking of life; that when an arrest is sought to be made, though for a misdemeanor only, and the person sought to be arrested resists by the use of a deadly weapon, the officer has the right, if he believes, and has reasonable grounds to believe, that the other will kill him or inflict great bodily harm upon him, to use his own weapon, even to the taking of life; that if the jury should find from the evidence that the defendant attempted to arrest the deceased while he was in the actual commission of a public offense, and that the deceased resisted such arrest with force, and that at that time the de-

fendant believed, and had reasonable grounds to believe, that the deceased would kill him or inflict great bodily harm upon him, and the defendant, to effect the arrest or to protect himself from death or great bodily harm, shot and killed the deceased, it was their duty to find the defendant not guilty; that, if an officer in making an arrest is driven away by a deadly weapon or by force, he is not required to flee or to refuse to return, or, having returned, to escape the impending danger by flight, in order to relieve himself from liability for killing his antagonist; that an officer may arrest any one committing a misdemeanor in his presence without a warrant; and that the officer may summon as many persons as he may deem necessary to aid him in making the arrest, and the officer in making the arrest is not bound to retreat, but may use such physical force as is apparently necessary to effect the arrest by overcoming the resistance he encounters, but in such a case he cannot take the life of one charged with the misdemeanor or even inflict upon him serious bodily harm, except to save his own life or prevent great bodily harm to himself. The court then proceeded to distinguish by illustration more fully between the rights of an officer in making an arrest in respect to felonies and misdemeanors, telling the jury that when a man has committed a felony, it being a more serious offense than a misdemeanor, and the officer is commanded by warrant to arrest him or has actually been a witness to the commission of the offense, it is the officer's duty to arrest the offender, and use such force as may be necessary to take him into custody, but, a misdemeanor being a lesser grade of crime, it is the duty of the officer while making the arrest not to inflict unnecessary bodily harm or death upon the person whom he is arresting, even though he may escape; that, to prevent an escape, the officer has no right to inflict serious bodily harm or death upon the person whom he is seeking to arrest for a misdemeanor; that to prevent an escape he may, if necessary, inflict death·or bodily harm upon one whom he is seeking to arrest for a felony, but in arresting a man for a misdemeanor, such as drunken or disorderly conduct or simple assault or fighting, if the man runs away, the officer has no right even to shoot at him, but it is his duty to get other persons to help him, and later on, when he can overcome his resistance, place him under arrest that he may answer for his

action; that the law makes that distinction in the two grades of offenses. Therefore, in the case before you, "it was the duty of this officer, under the facts as disclosed to you, in that street, to arrest Wayne Pursley, the deceased. It was not necessarily his duty to arrest him immediately. It was his duty also not to inflict bodily harm or death upon Wayne Pursley in order to effect the arrest. It is better that Wayne Pursley should escape arrest under the law than that he should have serious bodily harm inflicted upon him or death inflicted upon him merely to accomplish his arrest for a misdemeanor. It was the duty of the officer that the arrest should be delayed. It was the duty of the officer to delay the arrest to avoid doing serious bodily harm or inflicting death upon Wayne Pursley, until he had an opportunity to arrest him with the assistance of others. That is to say, he may summon assistance to accomplish the arrest without inflicting injury or death." The instructions then went on to say that, on the other hand, if it seemed wise to the officer at the time, it was right for him to attempt the arrest immediately, and that it was the officer's privilege to make the arrest when he started to. It was entirely within his rights to use force to overcome resistance; that the difference between resisting arrest and running away should be observed. Be the offense ever so trivial, if the offender actually resists arrest and fights back against arrest, the officer may use the force necessary and summon all the assistance that the surrounding circumstances offer him to enable him to overcome that resistance, even to the infliction of bodily harm, or even, if necessary in an extremity, the infliction of death; that it is the duty of the officer to avoid the infliction of injury or death in all cases when the man seeks to avoid arrest, and it does not devolve upon him to avoid the infliction of injury or death if it be necessary to overcome resistance, but he may inflict it only if it is necessary, and he may go only so far as it is necessary to effect the arrest to overcome resistance; that, if the officer's life becomes in jeopardy during the course of an attempt to overcome resistance in making the arrest, he has the right as anybody else to protect himself from bodily harm or death. The court thereupon proceeded to instruct the jury fully with respect to when under the statute a homicide is justifiable as a matter of self-defense.

The part of the court's instructions that is complained of is the part contained within the quotation marks above. The contention of the appellant, as we understand it, is not that the law as laid down was not correctly stated by the court, but that it was not the law applicable to the facts of the case. The claim is that from the time the appellant first came on the scene in the street until the time of the shooting the transaction was in effect a continuous one; that the deceased was defying the efforts of the peace officer to preserve the peace; that it was the duty of the peace officer to preserve the peace, that he had a right to beat into subjection a man in the act of committing a breach of the peace to prevent him from doing so, if he could not be subdued otherwise; that the offender for the instant was an outlaw; that under the circumstances of the case for the appellant to have withdrawn would have subjected the people to further disorder, and that it was the duty of the appellant to prevent the deceased from a further breach of the peace at all hazards, even to the extent of taking his life if necessary, and the complaint is that, in charging the jury that it was the duty of the officer to delay the arrest and avoid doing serious bodily harm upon Pursley; the peace officer was told that it was his duty to do exactly the opposite of what it was his duty to do, to wit, arrest the deceased then and there to restrain him from further violence. And it is also complained that the charge of the court was misleading to the jury in that there was no attempt on the part of the deceased to escape, and the jury were confused by the instructions of the court with respect to the law relating to an attempt of an offender to escape.

The defendant at the trial requested the court to charge that on the day in question the deceased was in the actual commission of a misdemeanor in the presence of the defendant. This charge the court gave, but limited it properly to the occurrences that took place in the street. The defendant, having requested the court to charge that the acts of the deceased at that time constituted a misdemeanor and not a felony, is now precluded from claiming on this appeal, as he does, that at the time the deceased was engaged in the commission of a felony rather than in the commission of a misdemeanor. The facts show that the appellant, the officer, was unsuccessful in

his attempt to arrest the deceased in the street at the time of the commission of this misdemeanor, that he returned later armed to effect the arrest, and that at that time the conflict occurred in which the appellant shot the deceased. The rights of the appellant, therefore, with respect to his freedom from liability for the homicide, depend upon the circumstances surrounding the transaction at the time of the homicide rather than at the time of the commission of the misdemeanor in the street. The case was presented to the trial court upon the theory as disclosed by the defendant's requested instruction that the officer had returned to effect the arrest of a man who had committed a misdemeanor, the offense which he had committed being at the defendant's own request defined as a misdemeanor, and the appellant cannot complain if the jury was instructed that the officer was held in making such arrest to the restrictions that the law placed upon an officer in making an arrest for a misdemeanor. It was not a question, then, of subduing and arresting an offender then engaged in a misdemeanor or a felony, but of arresting a person for a misdemeanor that had been committed. The trial court properly charged the jury that in making the arrest the officer had a right, if he believed and had reasonable ground to believe that the other would kill him or inflict great bodily harm upon him, to use his own weapon, even to the extent of taking his life; and gave proper instructions respecting the right of self-defense. It was also proper for the court to instruct the jury, as it did, that in arresting a man for the commission of a misdemeanor the officer was limited in the method of making such arrest as in the instruction specified, and it was not error to instruct the jury that it was not necessarily the duty of the officer to arrest the deceased immediately, and that it was his duty not to inflict bodily harm or death upon the deceased in order to effect the arrest. It was clearly a case where in the time, method, and means of making the arrest the officer had to exercise a proper discretion and to employ such means as the law justifies in making an arrest for a misdemeanor. It was proper for the court to so charge the jury, where, as here, such instruction was coupled with the further instruction that the officer, having decided that it was his duty to make the arrest, had the right, having embarked upon the undertaking, to carry out his purpose, and that he had the right in so

doing to protect himself from assault even to the extent of taking the offender's life if necessary. It was a case of an attempted arrest for an offense theretofore committed, although committed only shortly theretofore, and of resistance to such arrest. The rights of the officer under such conditions were fully and fairly covered by the instructions of the court, and such instructions in that regard are not complained of. Instructions given by a court to a jury must be taken as a whole, and isolated sentences or paragraphs will not afford ground for reversal where the instructions as a whole cover the ground, and where the isolated sentences or paragraphs are not incorrect, or misleading to the jury. Taking the instructions before us as a whole, we think they fully cover all the questions involved in the case, and that they correctly state the law applicable to the contested facts in the case, and that the appellant was not prejudiced thereby.

We find no error in the record, and the judgment will be affirmed.

DOAN, CAMPBELL, LEWIS, and DOE, JJ., concur.

NOTE.—As to homicide in effecting arrest, see note to *State* v. *Phillips* (Iowa), 67 L. R. A. 297.