ROBERTSON v. TERRITORY OF ARIZONA.

(Circuit Court of Appeals, Ninth Circuit. July 3, 1911.)

No. 1,933.

1. HOMICIDE (§ 298*)—MAKING ARREST—RIGHTS OF OFFICER.

Instructions, on the trial of a peace officer charged with homicide committed while attempting to arrest the deceased for a misdemeanor, considered, and, taken as a whole, *held* to correctly charge that, while defendant did not have the right to kill the deceased for attempting merely to avoid arrest by running away, he had the right to overcome actual resistance to arrest by such force as was necessary even to the taking of life.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 612; Dec. Dig. § 298.*]

2. CRIMINAL LAW (§ 823*)—TRIAL—INSTRUCTIONS—WEIGHT TO BE GIVEN TESTIMONY OF DEFENDANT.

On a trial for homicide in which defendant testified in his own behalf, an instruction, referring specifically to his testimony, that, if his statements were convincing and carried with them a belief in their truth, the jury had a "right to receive and act upon them," and, if not, they had a "right to reject them," was not erroneous, read in connection with a general instruction correctly stating the rules to be applied to the consideration of the testimony of all witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1995; Dec. Dig. § 823.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Supreme Court of the Territory of Arizona.

William D. Robertson was convicted of homicide, and, from a judgment of the Supreme Court of the Territory of Arizona (108 Pac. 217) affirming that of the court below, brings error. Affirmed.

Plaintiff in error was indicted in the district court of Graham county, Ariz., for the murder of one Wayne Purseley. At the time of the alleged murder, the plaintiff in error was the town marshal of the town of Safford in Graham county, and, in the performance of his duties as such town marshal, was endeavoring to arrest the deceased. The plaintiff in error pleaded not guilty to the indictment, was tried before a judge and a jury, which resulted in a verdict of conviction, and he was sentenced to a term of 15 months in the territorial prison. On appeal to the Supreme Court of the territory of Arizona the judgment of the lower court was affirmed. Robertson v. Territory, 108 Pac. 217. From this judgment plaintiff in error sued out this writ of error.

The facts of the case, as summarized by the Supreme Court of the territory in its decision, and which under the stipulation of counsel are to be taken as the statement of facts for the purpose of this writ of error, are, in substance, as follows:

On the day of the homicide there was in progress in the town of Safford, Graham county, Ariz., a celebration of the independence of the republic of Mexico. A large crowd had assembled in the town, attracted by the celebration, and some of the persons participating therein had become intoxicated. Wayne Purseley, of whose homicide the plaintiff in error was convicted, was among those in that condition. The deceased had a violent altercation with one Campbell and was using violent and threatening language against him. The plaintiff in error was at that time the marshal of the town of Safford. To him Campbell, after having been severely maltreated by the deceased, appealed for protection against further assaults by the deceased. The plaintiff in error, responding to this appeal, approached the deceased, who was demanding of the people holding him to be let loose to get at Campbell. The plaintiff in error remonstrated with him, saying: "Here, Wayne, that won't do. You can't do that. There are too many women and children on the street to be talking that way. You will have to go with me." Deceased said he would not go. The plaintiff in error then placed his hand upon deceased, who knocked the plaintiff in error down. A bystander attempted to calm deceased, and the deceased knocked the bystander down. The plaintiff in error again took hold of the deceased, and they clinched and fell, the plaintiff in error on top. The crowd interfered, rescued the deceased from the plaintiff in error, and took him away to a neighboring house. The plaintiff in error went to a saloon and got his revolver, and called upon a friend of the deceased to assist him, saying to him: "I have got to get him. Will you go with me?"

Meanwhile the friends of the deceased had been unable to keep him in the house where they endeavored to have him remain to have the wounds that he had received in the contest with Campbell further dressed. The deceased, however, resisted the efforts of his friends to restrain him indoors, and going through the house came into the yard, where he encountered the plaintiff in error. The plaintiff in error addressed the deceased as an officer, saying that the deceased must come with him, and referred to his conduct. A bystander asked that the deceased might be allowed to return to the house to have his wounds further dressed. The plaintiff in error said that he would take the deceased to the doctor or anywhere else that he wanted to go. The deceased said that the plaintiff in error should not arrest him, and, according to some testimony, applied opprobrious epithets to plaintiff in error, and struck him. At this juncture the brother of the deceased interfered, and many other people of the crowd rushed in, and there was confusion. The brother of the deceased told the plaintiff in error that he should not arrest the deceased. Thereupon plaintiff in error pulled his gun. The brother grabbed the gun and attempted to wrest it from the officer. In the meantime the deceased was striking at the officer with an open knife. The deceased, his brother,

and the plaintiff in error were all together engaged in a struggle. The plaintiff in error struck the brother of the deceased over the head with his gun, and the brother fled. Deceased continued fighting with the plaintiff in error. The plaintiff in error struck him twice over the head with the gun; but the blows did not stop the onslaught of the deceased. The officer became exhausted and fired upon the deceased, and still the deceased did not stop, and he again fired, and the deceased fell mortally wounded and died almost instantly. Many of the facts are contradicted, and a number of witnesses testified that at the time the fatal shot was fired the deceased was retreating and had declined further to struggle; but the evidence, as a whole, tends to establish the facts as above stated.

Walter Bennett, Kibbey, Bennett & Bennett, W. K. Dial, and Stoneman & Jacobs, for plaintiff in error.

John B. Wright, Atty. Gen. of Arizona, and W. J. Galbraith, for the Territory.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

MORROW, Circuit Judge (after stating the facts as above). The plaintiff in error complains of the instructions given to the jury by the trial court:

[1] 1. That the instructions were based upon the theory that the deceased was being arrested by the plaintiff for a misdemeanor, and not for a felony; and that the instructions were so drawn as to mislead the jury. The plaintiff in error requested the court to instruct the jury that:

"The deceased was in the actual commission of a misdemeanor in the presence of the plaintiff in error, who was at that time a peace officer, to wit, the town marshal of the town of Safford, in Graham county, Ariz., and that it was the duty of the plaintiff in error as such peace officer to then and there arrest the deceased, Wayne Purseley."

Had this instruction been given by the court as requested, and had stopped there, there might have been ground for this criticism; but not for complaint, since it was an instruction requested by the plaintiff in error. The court gave the first clause of the instruction as requested, but specifically limited it to the time when the plaintiff in error first encountered the deceased in the street. The court said:

"This instruction is to be limited in its effect to the time at which, under the testimony, the defendant went into the street, and to the time in which the incidents covered by the testimony which occurred in the street were in their progress."

This was not the time when the tragedy occurred. The plaintiff in error failed at this time to accomplish the arrest of the deceased. In this encounter the crowd interfered, rescued the deceased, and took him away to a neighboring house. In the second encounter, when the deceased came from the house into the yard, the situation took on an entirely different complexion, and there is evidence tending to show that the deceased became an aggressor. The deceased declared that the plaintiff in error should not arrest him, and there was evidence that he struck the plaintiff in error. The plaintiff in error thereupon pulled his gun. A brother of the deceased attempted to take the gun away from him. In the meantime the deceased was striking at the

plaintiff in error with an open knife. The plaintiff in error struck the deceased twice upon the head with the gun, but the blows did not stop the onslaught of the deceased. The plaintiff in error became exhausted, and fired upon the deceased, and still he did not stop. Then it was that the plaintiff in error fired the fatal shot. How did the trial court treat this part of the affray in its instructions to the jury? The court said:

"Where an arrest is sought to be made, though for a misdemeanor only, and the person sought to be arrested resists by the use of a deadly weapon, the officer has the right, if he believes, and has reasonable grounds to believe, that the other will kill him or inflict great bodily harm upon him, to use his own weapons even to the taking of life."

Further on in the instructions the court said:

"It was entirely within his rights (that is to say, within the rights of the plaintiff in error as an officer) to use force to overcome resistance. You must observe the difference between resisting arrest and running away. Be the offense ever so trivial, if he actually resists arrest and fights back against arrest, the officer may use all force necessary and summon all the assistance that the surrounding circumstances offer him, to enable him to overcome that resistance even to the infliction of bodily harm, or, if necessary in extremity, the infliction of death. This duty of the officer to avoid infliction of injury or death only occurs when the man seeks to avoid arrest, but it does not devolve upon him to avoid the infliction of injury or death if it be necessary to overcome resistance, but he may inflict it only if it is necessary, and he may go only so far as it is necessary to effect arrest or overcome resistance. If the officer's life becomes in jeopardy during the course of the attempt to overcome resistance in making the arrest, he has the right as anybody else to protect himself from bodily harm or death."

We do not think that these instructions, taken as a whole, were misleading; or that in this final affray the jury understood that they were instructed that the plaintiff in error could use no force other than was necessary to arrest the defendant for a misdemeanor committed in his presence, or that he could not defend himself from the assaults of the deceased. The act of the deceased in committing a misdemeanor in the presence of the officer was, of course, the original cause for the arrest; but, if the jury believed the testimony, the cause had grown to include the actual forcible resistance of arrest by the deceased, and a necessity had been thrown upon the plaintiff in error to overcome such resistance and defend himself against the assault of the deceased. Whether the jury gave to this testimony the weight it was entitled to receive, or whether they believed that the deceased was retreating and had declined further struggle when the fatal shot was fired, as some of the witnesses testified, is another question, and one with which we are not called upon to deal. The only question this court has to determine is whether the trial court in directing the attention of the jury to this testimony did so with proper instructions as to the law applicable to that situation. We think it did, clearly and distinctly, and that there is no ground of complaint.

2. It is objected that the court did not give the last clause of the requested instruction as follows:

"And that it was defendant's duty as such peace officer to then and there arrest the deceased, Wayne Purseley."

The court gave the instruction in its appropriate place, and in appropriate language, and more favorable to the defendant than the requested instruction, as follows:

"You are instructed as a matter of law that it is not only the right but the duty of a peace officer to arrest a person who is committing a public offense in his presence, and that in making such arrest he may use such force as is necessary to overcome all resistance and may repel force with force and need not give back; and, when the offender puts the peace officer's life in jeopardy, the officer may use sufficient force to overcome the resistance he encounters even to the taking of life."

[2] 3. It is next objected that the instruction of the court singled out the plaintiff in error from among all the other witnesses who were examined in the case, and, calling attention to his special interest in the case, instructed the jury that they were to consider the very great interest he must have and feel in the result of the case, and the effect the verdict would have upon him, and determine to what extent, if any, such interest would color his testimony or affect his credibility; that, if his statements be convincing and carry with them belief in their truth, the jury had the "right to receive and act upon them"; if not, they had the "right to reject them." This instruction had been twice approved by the Supreme Court of the Territory. Halderman v. Territory, 7 Ariz. 120, 60 Pac. 876; Prior v. Territory, 11 Ariz. 169, 89 Pac. 412.

In the present case the Supreme Court held the instruction not to be error, but said it was in some respects an undesirable instruction, and recommended to the District Courts that its use be discontinued. Robertson v. Territory, 108 Pac. 217. It is contended that this recommendation is an admission that the instruction does not correctly state the law, and, if the instruction should be given again by a district judge, the Supreme Court would hold it to be error. We do not so understand the opinion of the Supreme Court. The instruction appears to be substantially in accord with recognized authority. In the case of People v. Cronin, 34 Cal. 191, 195, 204, substantially the same instruction was given to the jury, and the instruction was sustained by the Supreme Court of the state in the following language:

"The instruction of the court in relation to the credibility of the defendant, who offered himself as a witness, was in all respects legal and proper. We do not agree with the learned counsel for the defendant in holding that it is not competent for the court to single out a particular witness and charge the jury as to his credibility. On the contrary, the less abstract the more useful the charge. Jurors find but little assistance in the charge of a judge who deals only in the general and abstract propositions which he supposes to be involved in the case, and leaves the jury to apply them as best they may."

In Reagan v. United States, 157 U. S. 301, 306, 15 Sup. Ct. 610, 611 (39 L. Ed. 709), the instructions in a number of cases of a similar import, including the instruction in the Cronin Case, were referred to as an authority for the approval of an instruction in the case before the court, in the following language:

"The law permits the defendant at his own request to testify in his own behalf. The defendant here has availed himself of this privilege. His testimony is before you, and you must determine how far it is credible. The deep personal interest which he may have in the result of the suit should be con-

sidered by the jury in weighing his evidence and in determining how far or to what extent, if at all, it is worthy of credit."

But the specific objection is made to the instruction that it told the jury that if the statements of the defendant "are convincing, and carry with them a belief in their truth, the jury had a "right to receive and act upon them; if not, they had a right to reject them." It is contended that this instruction authorized the jury to reject the testimony of the plaintiff in error unless it in itself carried the belief in its truth, even though it might be corroborated by the testimony of other witnesses. This is another instance where an instruction taken singly and by itself may be considered open to criticism, and perhaps it was this criticism that moved the Supreme Court of the territory to say that the instruction was in some respects undesirable and recommended that its use be discontinued. But the instruction should be taken in connection with the preceding instructions, where the court told the jury that, in determining the credibility of any witness and the weight to be given to his testimony, the jury had the right to take into consideration, among other things, "the probability or improbability of the truth of his statements when considered in connection with the other evidence in the case." When the instruction in question is considered with this instruction upon the same subject, we do not see how the jury could have been misled as to the consideration they were required to give to the defendant's testimony if corroborated by the testimony of other witnesses.

It is objected further that the jury were instructed that they had a "right" to receive the defendant's statements if they were convincing and carried with them a belief in their truth; whereas, the instruction should have been that they "should" do so, that is to say, the instruction should have been imperative and not permissive. We think this objection is hypercritical. It will be presumed that the jury would do what they had a right to do, and that they would not refuse to receive defendant's statements if they were convincing and carried with them a belief in their truth, simply because the court had not told them that they "should" do so. The instruction might be improved, as indicated by the Supreme Court; but we cannot hold that it contained error prejudicial to the defendant.

After carefully considering all the objections urged against the instructions by the plaintiff in error, we are of the opinion that they do not contain any error for which the case should be reversed.

The judgment is therefore affirmed.