[Criminal No. 323.   Filed October 14, 1912.]

[127 Pac. 754.]

J. M. ERICKSON, Appellant, v. STATE OF ARIZONA, Respondent.

1. INDICTMENT AND INFORMATION—REQUISITES AND SUFFICIENCY—PLACE OF OFFENSE.—An objection to evidence on the ground that the indictment charged the commission of the offense in the county of Greenlee, state of Arizona, at the time when there was no state

of Arizona, was properly overruled; Greenlee county having been
one of the counties of Arizona territory with the same boundaries
as it has under statehood.

**2.** CRIMINAL LAW—JUDICIAL NOTICE—GEOGRAPHICAL FACTS.—On objec-
tion to an indictment because it charged the commission of an of-
fense in the county of Greenlee, state of Arizona, at a time when
there was no state of Arizona, the court properly took judicial
notice that the boundaries of the state and territory of Arizona
were identical, and that Greenlee county had the same boundary
under statehood as in the territory of Arizona.

**3.** NAMES—IDEM SONANS—VARIANCE—QUESTION FOR JURY.—Where an
indictment charged accused with obtaining money by false pretenses
from George Goolsby, while the evidence showed that his name was
Goosbey, the court should have submitted the question of whether
the two names were *idem sonans* to the jury, and erred in holding,
as a matter of law, that they were *idem sonans.*

**4.** CRIMINAL LAW—RESERVATION OF GROUNDS OF REVIEW—REQUEST FOR
SUBMISSION OF QUESTIONS—NECESSITY.—On a trial for obtaining
money by false pretenses, where the court ruled, as a matter of
law, that the name of the party defrauded, as shown by the indict-
ment and as shown by the evidence, was *idem sonans,* the question
of variance was open for review on appeal, although accused did
not request the submission to the jury of the question whether they
were *idem sonans.*

**5.** FALSE PRETENSES—WEIGHT AND SUFFICIENCY OF EVIDENCE.—On a
trial for obtaining money by trick and deception and by falsely
pretending that accused was an attorney authorized to practice in
the courts, and that he could obtain a divorce for the complaining
witness, where the testimony of the complaining witness that ac-
cused said he was an attorney was uncorroborated, accused denied
saying this, claiming that he only said he had an agency with two
attorneys who could obtain such divorce, and no note or memo-
randum of any false token or writing, subscribed by accused, was
offered in evidence, the proof was insufficient to support a convic-
tion, under Penal Code of 1901, paragraph 937, providing that upon
a trial for obtaining money by any false pretense, with intent to
cheat or defraud, accused cannot be convicted if the false pretense
was expressed in language, unaccompanied by a false token or writ-
ing, unless the pretense, or some note or memorandum thereof, is
in writing, subscribed by or in the handwriting of accused, or un-
less the pretense is proved by the testimony of two witnesses, or
that of one witness and corroborating circumstances.

**6.** FALSE PRETENSES—ADMISSIBILITY OF EVIDENCE—INTENT.—On a trial
for obtaining money by the false pretense that accused was an at-
torney and could obtain a divorce for the complaining witness,
where accused claimed that he did not say he was an attorney,

but that he had an agency with attorneys who could obtain such a divorce, the testimony of a practicing attorney that he had been engaged by accused to care for such divorce proceeding should have been admitted as tending to show a lack of intent to defraud.

7. CRIMINAL LAW—INSTRUCTIONS—"CHARGE WITH RESPECT TO MATTERS OF FACT."—Under constitution, article 6, section 12, providing that judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law, an instruction that the testimony of accused should be weighed, like that of any other witness, but that the jury may consider his very great interest in the result, is erroneous; such an instruction clearly being a "charge with respect to matters of fact," although such an instruction would not, in every case, be reversible error, in view of constitution, article 6, section 22, providing that no cause shall be reversed for technical error when substantial justice has been done.

8. FALSE PRETENSES — STATUTORY PROVISIONS—"CONFIDENCE MEN."— Penal Code of 1901, paragraph 489, providing that any person who, with intent to cheat and defraud, shall obtain money from any other person by means of any trick or deception or false or fraudulent representation or statement of pretense, or any other means or instruments or device commonly called the "confidence game," or by means of any false or bogus check, or any other printed, written or engraved instrument or spurious coin or metal, shall be guilty of a felony, was intended to reach the class of offenders known as "confidence men," who obtain, through some false representation, trick, or deception, the money of their victim, whose confidence has first been secured through some false representation or deception, and does not cover a case where a party obtains money by falsely pretending that he is an attorney and can obtain a divorce for the party defrauded; such offense being covered by section 481, dealing with the subject of ordinary false representations, and providing that any person who, by false or fraudulent representations or pretenses, defrauds any other person of money or property, and thereby fraudulently gets possession of money or property, is punishable as therein provided.

APPEAL from a judgment of the Superior Court of the County of Greenlee. F. B. Laine, Judge. Reversed and remanded.

The facts are stated in the opinion.

Mr. L. Kearney, for Appellant.

Mr. G. P. Bullard, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for Respondent.

ROSS, J.—The defendant was indicted by the grand jury of Greenlee county under paragraph 489 of the Penal Code. We give here enough of the indictment to show the facts upon which it is founded: "The said J. M. Erickson, on or about the fifteenth day of March, A. D. 1910, and before the finding of this indictment, at the county of Greenlee, state of Arizona, did willfully, unlawfully, and feloniously then and there, with intent unlawfully and feloniously to cheat and defraud one George Goolsby, then and there unlawfully, knowingly, and feloniously, by use of a trick and deception and false and fraudulent representation, statement, and pretense, did falsely and fraudulently represent and pretend to the said George Goolsby that he, the said J. M. Erickson, had full right and authority to practice law, represent litigants, and obtain decrees of divorce in the courts of Arizona, and that he, the said J. M. Erickson, could get a decree of divorce for the said George Goolsby."

The indictment with particularity alleges further that the plaintiff was not an attorney at law, and had no right to practice law in the courts of Arizona, but that by means of such false representations the defendant obtained from said Goolsby the sum of $30.

Upon his trial defendant was convicted, and from the judgment of conviction, and from an order overruling his motion for a new trial, he has appealed to this court.

We will consider the errors complained of, or, at least, those that merit consideration, in the order in which the appellant presents them.

(1) The indictment charges the commission of the offense on or about March 15, 1910, in the county of Greenlee, *state* of Arizona. Upon the first offer of evidence by the state, the appellant objected, on the ground that on March 15, 1910, there was no sovereignty in the United States known as the state of Arizona. The lower court properly proceeded with the trial of the case. The venue was laid in Greenlee county, one of the counties of the state of Arizona and likewise of the territory of Arizona. The court properly took judicial notice of the fact that the boundaries of the state are identical with the boundaries of the territory, and that Greenlee county has the same boundary under statehood as it possessed in the territory of Arizona.

(2) The name of the injured party is laid in the indictment as George Goolsby; whereas he testified that his true name is George Goosbey. This difference in name was disclosed during the taking of the testimony of the prosecuting witness. Whereupon, at the close of the state's case, the appellant moved for an instructed verdict in favor of defendant, upon the ground of a variance in the name as alleged and as proved. The court properly overruled this motion; for, as we shall see, it presented a question of· fact to be passed upon by the jury and not the court. The appellant failed to ask that the question as to whether the names were *idem sonans* or not be submitted to the jury. This, we think, should have been done; and but for the fact that the court had announced in an early stage of the trial, as a matter of law, that the names were *idem sonans* we would be concluded from considering the point. It may well be assumed that the reason the appellant did not request that the question of *idem sonans* be submitted to the jury was because the court had already ruled that it was a question of law to be decided by the court, and not a question of fact to be decided by the jury. In this view of the case, the point is properly before us for decision.

"*Idem sonans* means of the same sound. It exists when the attentive ear finds difficulty in distinguishing the names when pronounced." 1 Wharton on Criminal Evidence, sec. 97. The names "Goolsby" and "Goosbey" are sufficiently alike in spelling to·warrant the court in submitting to the jury, after they had heard the names pronounced by witnesses, the question as to whether they are *idem sonans*. It was for the jury to say whether they have "the same sound." In *State* v. *Thompson,* 10 Mont. 549, 27 Pac. 349, 351, the court said: "We understand, from a review of the authorities, that the rule is that if the question of *idem sonans* arises on demurrer it is for the court; but if on an issue of fact it is for the jury. 'The question of whether one name is *idem sonans* with another is not a question of spelling, but of pronunciation, depending less upon rule than upon usage, which, when it arises in evidence on the general issue, is for the jury, and not for the court, and was rightly submitted to the jury in this case': *Commonwealth* v. *Donovan,* 13 Allen (Mass.), 571. In *Commonwealth* v. *Warren,* a very recent case in the same court, 143 Mass. 568, 10 N. E. 178, we find the following lan-

guage: 'The province of the court and jury in cases like the present is governed by the following rule: If two names, spelled differently, necessarily sound alike, the court may, as a matter of law, pronounce them to be *idem sonans;* but if they do not necessarily sound alike the question whether they are *idem sonans* is a question of fact for the jury.' '' 29 Cyc. 277; *Perez* v. *Territory, ante,* p. 163, 125 Pac. 483; 1 Wharton on Criminal Evidence, sec. 97.

The trial court committed error in holding, as a matter of law, that the names were the same in sound.

(3) One of the material facts to be proved under the indictment was that defendant represented to the prosecuting witness, at the time or before the money changed hands, that he was a practicing attorney in the courts of Arizona. No witness, excepting the prosecuting witness, testified that defendant said he was an attorney eligible to practice in the courts of Arizona. The defendant explained that he told Goosbey that he was not an attorney, but that he had an agency with two attorneys, one especially, who would get a divorce for Goosbey, and Goosbey paid him the money with that understanding. The testimony of Goosbey was not corroborated by any other witness on this main fact; nor was any note or memorandum of any false token or writing, subscribed by or in the handwriting of the defendant, placed in evidence. Under paragraph 937, Penal Code, a person cannot be convicted for having, with intent to cheat and defraud another designedly, by any false pretense, obtained money, personal property, or valuable thing, unless the pretense, or some note or memorandum thereof, be in writing, subscribed by or in the handwriting of defendant, or unless the pretense be proven by the testimony of two witnesses, or that of one witness and corroborating circumstances. In this case it was one oath against another on the essential fact as to whether defendant represented himself as an attorney at law, entitled to practice in the Arizona courts. We cannot ignore the clear and explicit provisions of the statute. *State* v. *Buckley,* 18 Or. 228, 22 Pac. 838; *People* v. *Martin,* 102 Cal. 558, 36 Pac. 952; *People* v. *Gibbs,* 98 Cal. 661, 33 Pac. 630; *People* v. *Mauritzen,* 84 Cal. 37, 24 Pac. 112.

(4) As above stated, the defendant testified that he did not represent to Goosbey that he was an attorney at law, but that

he would secure a lawyer to procure the divorce for Goosbey. Several witnesses testified that Goosbey had told them that defendant would employ an attorney to institute the divorce suit. Defendant offered to prove by W. C. McFarland, a practicing attorney located at Clifton, that his services had been engaged by defendant to care for the divorce proceeding. This offer was rejected by the court, and, we think, wrongfully. If, as a matter of fact, the defendant had an arrangement with Mr. McFarland by which he was authorized to take cases and accept fees and retainers in that behalf, and so informed Goosbey at the time, or before any money was passed, proof of that fact would be very material as tending to show a lack of intent to defraud. "The intent of the defendant is the principal element to prove, and the widest latitude is allowed. All available information should be received; and no circumstances should be excluded which will throw, or tend to throw, any light upon the intent of the parties, or upon the falsity of the representation." Underhill on Criminal Evidence, 2d ed., sec. 437.

(5) The appellant complains of the giving of this instruction: "The defendant in this case has been sworn as a witness in his own behalf in this case, and you are instructed that his testimony should be weighed as that of any other witness; but you are at liberty to consider the very great interest which he has in the result of your verdict."

Under the laws of Arizona, defendant may testify in his own behalf, and in doing so his testimony ought not to be singled out by the trial court in its instructions and commented upon. It is true that he is greatly interested in the result of the trial; but our observation is that often the witnesses for the prosecution are actuated by motives of revenge and hatred, and in their zeal exaggerate and color their testimony. A general instruction on the credibility of witnesses will better subserve the law and the ends of justice than to single out and in a way penalize any witness because his misfortunes or necessities compel him to testify in a court of justice.

In *Robertson* v. *Territory,* 13 Ariz. 11, 108 Pac. 217, the supreme court of the territory used this language: "This charge in this precise language has been twice approved by this court, *Halderman* v. *Territory,* 7 Ariz. 120, 60 Pac. 876;

*Prior* v. *Territory,* 11 Ariz. 169, 89 Pac. 412. While the giving of this instruction was, therefore, not error on the part of the trial court, we believe that in some respects it is an undesirable instruction to be given, and we recommend to the district courts that its use be discontinued."

Since the adoption of our constitution, we think we should go further and hold that such instruction is not only "undesirable," but error. Section 12, article 6, constitution of Arizona, is "Judges shall not charge juries with respect to matters of fact nor comment thereon, but shall declare the law." Any instruction that directs the jury's attention particularly to the testimony of the defendant and authorizes them to consider its comparative weight, with an implication that its value is to be tested by a rule different from the rule applicable to the testimony of any other witness, is certainly a charge "with respect to matters of fact." While the instruction in this case is mild, compared with the usual instruction upon defendant's testimony, it is, nevertheless, objectionable. We do not want to be understood as announcing that such instruction would be considered as sufficient ground in every case for reversing the judgment; for the above provision of the constitution must be construed in connection with section 22, article 6, of the constitution, which provides that: "No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." But, as such instruction is not the law, the trial courts should never give it.

The California courts, under a constitutional provision similar to ours (but not as prohibitive), in their later decisions are holding instructions of like import to the one in this case reversible error. We quote, as expressing our views, from *People* v. *Borrego,* 7 Cal. App. 613, 95 Pac. 381, 382: "The criticism of this instruction by the supreme court in numerous cases, and its repeated cautioning against the giving of it having gone unheeded, it at last declared, in *People* v. *Maughs,* 149 Cal. 263, 86 Pac. 187, that in all future cases its giving on behalf of the prosecution would be sufficient to justify a reversal of the judgment. The instruction is, in effect, an argument against the defendant upon a matter of fact delivered by the court. As said in *People* v. *Winters,* 125 Cal. 330, 57 Pac. 1067, the credit to be given to the testimony of the de-

fendant, like that of any other witness, is a matter with which the court has nothing to do. To give such an instruction is to expressly disparage the defendant—'the very thing that a court has no authority to do, in view of our constitutional provision.' *People* v. *Ryan,* 152 Cal. 364, 92 Pac. 853.''

(6) We do not think the facts as proved in this case, if true, constitute the offense denounced by paragraph 489 of the Penal Code. As was said in *Kimball* v. *Territory,* 13 Ariz. 310, 317, 115 Pac. 71: ''This latter section, taken from Missouri, so far as its provisions which we have discussed are concerned, is intended to reach a class of offenders sometimes known as 'confidence men,' who, with intent to cheat and defraud, obtain, through some false representation, trick, or deception, the money of their victim, whose confidence has first been secured through some false representation or deception. It provides for a class of false representations not included in section 481, which deals with the subject of ordinary false representations. *State* v. *Pickett,* 174 Mo. 663, 74 S. W. 844.'' Section 481, Penal Code, was intended to cover cases in which the facts are as in this case.

The judgment of the trial court is reversed and the case is remanded, with direction that defendant be given a new trial according to the views herein expressed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

---

NOTE.—The law of *idem sonans* is the subject of a note in 100 Am. St. Rep. 322.

As to what is a confidence game, see note in Ann. Cas. 1913B, 460.