472 P.2d 71

The STATE of Arizona, Appellee,

v.

Jordan D. HOLMES, Appellant.

No. 10012–PR.

Supreme Court of Arizona,
In Banc.
July 8, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Estrada, Estrada & Ross, by Carlos R. Estrada, Phoenix, for appellant.

McFARLAND, Justice.

Jordan D. Holmes—hereinafter referred to as defendant—was tried and convicted of the crime of grand theft by false pretenses. From his conviction the 12th day of December 1968 he appealed. The Court of Appeals affirmed the conviction. State v. Holmes, 11 Ariz.App. 433, 465 P.2d 372. We granted defendant's motion for review. Decision of the Court of Appeals is vacated.

The defendant was charged with, on or about the 20th day of March 1964, knowingly and designedly by false or fraudulent representation or pretense stealing from Cornell Ross more than one hundred dollars. The testimony of Cornell Ross, the complaining witness, and that of defendant are in direct conflict in regard to the defendant's "knowingly and designingly" and by false or fraudulent representation or pretense stealing money from the complaint.

In reviewing an appeal on a conviction this Court has held that it is required to review the evidence in the light most favorable to the State, and that all reasonable inferences must be resolved against the defendant. State v. French, 104 Ariz. 359, 453 P.2d 505; State v. Hannon, 104 Ariz. 273, 451 P.2d 602; State v. Davis, 104 Ariz. 142, 449 P.2d 607; State v. Enriquez, 104 Ariz. 16, 448 P.2d 72. Following this rule, if we were considering only the testimony of the complainant and the defendant which is in direct conflict, we would be required to affirm the conviction of the defendant. However, Section 13–664, subsec. A, A.R. S.,[1] requires corroboration of the testimony of the complaining witness in regard to the charge of "fraudulent representation or false pretense."

Cornell Ross, the complaining witness, prior to coming to Arizona had lived in Pennsylvania working as a foreman for the Kaiser Aluminum Company. In April 1961 he moved to Arizona where he worked for Reynolds Aluminum Company. In April 1962 he purchased the Antler Tavern in Tempe, Arizona. The sale included a Series 7 liquor license—that is, a license to sell beer and wine. On December 2, 1963, he submitted an original application to the State Liquor Department for a Series 6 liquor license—that is, a license to sell all forms of liquor. The state did not issue the No. 6 license to Ross since all of the quota had been issued for that period. He withdrew the application on or about July 16, 1964. From December 1963 to July 16, 1964, he had repeatedly inquired about the status of his pending license. Ross met a

---

1. § 13–664. *Proof of false pretense*

A. Upon a trial for having obtained the signature of a person to a written instrument, or having obtained from a person money, personal property or other valuable thing, with an intent to cheat or defraud another designedly by any false pretense, defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof, is in writing, subscribed by or in the handwriting of defendant, or unless the pretense is proved by the testimony of two witnesses, or that of one witness and corroborating circumstances.

B. Subsection A of this section shall not apply to a prosecution for falsely representing or personating another, and, in such assumed character, marrying or receiving money or property.

Mr. Elmer King at his tavern, who was a State Legislator, in the middle of February 1964, on which occasion he explained to King that he had applied for a No. 6 license but was having difficulty getting the license issued. King offered to be of such assistance as he could. Ross testified that King told him that a friend owned a No. 6 license and would sell the same for $2,500. Ross asked King to arrange for a meeting. During the month of March, Ross testified, he met with the defendant—also a State Legislator—who represented that he owned a No. 6 license which was being returned to him, and offered to sell his license to Ross for $2,500 with $1,500 down. Ross stated that he had checked on sales of licenses, and he found that "real-estate people" were asking $3,500, although "other people" were asking $2,500—that he borrowed the money to buy the license from the defendant for $2,500, $1,500 down, at which time the defendant gave Ross a receipt in words and figures as follows:

"Receipt Date 3–20–1964 No. 1273 Received from Cornell Ross address 600 W. Baseline Rd Tempe Fifteen Hundred no/100 Dollars $1500⁰⁰ for Personal Service

And in the event the service is not Rendered the full amount to be returned

"By /s/ J. D. Holmes"

Ross testified that although repeated requests were made the defendant did not deliver the license. Ross also testified that he read the receipt that defendant had given him, and after his wife commented that it was not spelled out very well he took the receipt to the defendant and told him it "wasn't very valid the way he had written it." The defendant thereupon spelled out the word "hundred," which had been written "hun." This was done approximately a month after original delivery of the receipt.

Testimony of King was to the effect that Ross had told him he wanted to do some remodeling in the tavern, and he [King] told him about defendant who did that type of work, and introduced him to Ross. Defendant testified that he made a contract with Ross to do the remodeling work, and that Ross paid defendant $1,500 which was paid in cash—that the job was to cost approximately $4,500—the $1,500 to be returned if the services were not rendered. The question therefore is whether the testimony of Ross was corroborated, in which he stated that the defendant represented to him that he owned a No. 6 license and agreed to sell the same to Ross for the sum of $2,500 with $1,500 down, and that Ross agreed to purchase the license upon these terms. This, according to the brief of the Attorney General, constituted the obtaining of money under "fraudulent representation or false pretenses." The testimony of the defendant was corroborated by that of King. However, in the instant case, under the rule of evidence, we are called upon to pass only upon the question of whether the testimony of Ross in regard to the "fraudulent representation or false pretenses" was corroborated.

The testimony of the state shows that, according to testimony of Rodney Stromer of the bank, Ross withdrew $1,500. There is no dispute as to the payment of the $1,500 to the defendant. Richard Reimer of the liquor department testified that the defendant never owned a No. 6 liquor license. So the only question involved is whether that part of the testimony of Ross in regard to the fraudulent representation or false pretenses has been corroborated. Under Section 13–664, A.R.S., any false pretense—when "expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof, is in writing, subscribed by or in the handwriting of defendant, or unless the pretense is proved by the testimony of two witnesses, or that of one witness and corroborating circumstances."

The wording of the receipt does not corroborate the testimony of Ross. It

does not show that it was for a purchase. The consideration expressed does not wholly conform to the testimony of Ross because there is no mention of $2,500. On the contrary, the receipt expressly states it is for "personal services." The words "personal services" do not show a contract to buy. "Service" is defined in Webster's Third International Dictionary as "The performance of work commanded or paid for by another; * * *" Under this definition the receipt falls short of corroboration. Nor does the receipt support a reasonable inference of corroboration that the agreement was for the sale of a liquor license. On the contrary it could support an inference that Ross employed the defendant to do work on the condition that the No. 6 license was issued for the reason that Ross thought that defendant, being a member of the legislature and on a revision committee for liquor, would be helpful in securing the approval of Ross's application for a No. 6 liquor license. And with the support of both the defendant and King (who were personal friends), Ross felt sure that he could secure his license with their influence. It could also infer that he had directly employed the defendant as a legislator to use his influence to secure the No. 6 license. Neither Ross nor the defendant admit this.

The attorney general contends that the testimony of Mary Hockey who was at the time a bartender for Ross corroborated the testimony of false representations upon which the conviction was based. We cannot agree with this contention. In the first place, Mary Hockey's testimony was not introduced "as a part of the State's case in chief." In offering the testimony, the defendant's attorney asked the question if the State were re-opening its case. The assistant county attorney stated: "I assume it is rebuttal." The testimony as introduced only rebutted the testimony of King, and related to a statement made by King to Mary Hockey. When the defendant's attorney objected on the hearsay ground the assistant county attorney again stated:

"Well, may I say this is for impeachment purposes, beyond the regular testimony."

This is the only theory for which it could have been admitted. The statement which the State claims to be corroborative was to the effect that King had told her that he was sorry about what had happened, and that he knew that Mr. Holmes had had a license for Mr. Ross. This was to impeach the testimony of King in which, on cross-examination, he had denied making such a statement to Mary Hockey. As far as this testimony is concerned, it was as stated by the assistant county attorney for the purpose of impeaching King. King's testimony only corroborated that of defendant. Mary Hockey at no time testified in regard to the conversation between Ross and the defendant. So there remains no testimony corroborating the testimony of the complainant. The receipt falls short of corroboration. The corroboration required is that there were false pretenses made for the purpose of perpetrating the fraud.

In the case of Erickson v. State, 14 Ariz. 253, 127 P. 754, the defendant was charged with the crime of obtaining money through false representation in that he had represented to the victim that he was an attorney at law and could secure a divorce for her. In passing upon the question of corroboration of the false representation which was required under the statute at that time, the court said:

"(3) One of the material facts to be proved under the indictment was that defendant represented to the prosecuting witness, at the time or before the money changed hands, that he was a practicing attorney in the courts of Arizona. No witness, excepting the prosecuting witness, testified that defendant said he was an attorney eligible to practice in the courts of Arizona. The defendant explained that he told Goosbey that he was not an attorney, but that he had an agency with two attorneys, one especially, who would get a divorce for Goosbey, and Goosbey paid him the money with that

understanding. The testimony of Goosbey was not corroborated by any other witness on this main fact; nor was any note or memorandum of any false token or writing, subscribed by or in the handwriting of the defendant, placed in evidence. Under section 937, Penal Code, a person cannot be convicted for having, with intent to cheat and defraud another designedly, by any false pretense, obtained money, personal property, or valuable thing; unless the pretense, or some note or memorandum thereof, be in writing, subscribed by or in the handwriting of defendant, or unless the pretense be proven by the testimony of two witnesses, or that of one witness and corroborating circumstances. In this case it was one oath against another on the essential fact as to whether defendant represented himself as an attorney at law, entitled to practice in the Arizona courts. We cannot ignore the clear and explicit provisions of the statutes. * * *"

As stated in Erickson, supra, we cannot ignore the explicit provisions of the statute. Undoubtedly the legislature was recognizing the danger of permitting a conviction of theft by false pretenses on the testimony of a complainant. There is the danger of misunderstanding of an agreement of the parties, and as stated by Judge Donofrio, in the special concurring opinion:

"* * * the frailties of human nature, a person who has lost property may become prejudiced and may therefore easily misrepresent facts. To protect against this, the actual fact of the misrepresentation must be corroborated. * * *" State v. Holmes, 11 Ariz.App. 433, at 437, 465 P.2d 372, at 376.

■ Our legislature has provided that in proving guilt of theft by false pretenses it must be by two witnesses, or testimony of complainant must be corroborated. This corroboration may be by corroborating circumstances; however, those circumstances must be such that they would equal the testimony of a second corroborating witness in regard to the falsity of the alleged false representation. If it is intended to be corroborated by testimony of a second witness, it is not enough to show merely by another witness that the accused talked with the complaining witness. The testimony of the corroborating witness must corroborate the testimony of the complainant in regard to the false statement. People v. Curran, 24 Cal.App.2d 673, 75 P.2d 1090; People v. Chamness, 109 Cal. App.Supp. 778, 288 P. 20; People v. Woodcock, 52 Cal.App. 412, 199 P. 565; People v. Neetens, 42 Cal.App. 596, 184 P. 27.

Section 13-664, A.R.S., is similar to the Penal Code of California 1110. The California court, in construing this section, stated :

"* * * we cannot weigh the evidence, and we speak of its impression upon us solely because the situation illustrates the wisdom of the requirement of section 1110 of the Penal Code that, on a trial for obtaining money by a pretense consisting of an oral statement, 'the defendant cannot be convicted * * * unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances.' Earls was the only witness who testified that the defendant made the statement that the material bill he had paid was on the Earls job. It was not enough to produce a second witness who testified that there was a conversation respecting the payment of *a* bill, but who heard nothing about the Earls bill. See People v. Neetens (1919) 42 Cal.App. 596, 600, 184 P. 27. Now are the circumstances of the case, which we do not here detail, corroborative of the testimony that the defendant made the pretense claimed. Rather they negative the conclusion that he made the statement charged to him." People v. Chamness, 109 Cal.App.Supp. 778, at 781, 288 P. 20, at 22.

The attorney general, in his brief, stated:

"Appellant argues that the fact that one accused of theft received money from a victim does not justify the inference that the accused made a false pretense in order to get the money; and of course, his proposition is unassailable. * * *"

We agree with this statement. The testimony and the circumstances fall short of corroborating the statement of Ross, the complaining witness, in regard to the alleged false pretenses in the instant case.

The decision of the Court of Appeals is vacated, and the judgment of conviction of the Superior Court is reversed and vacated.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.