549 P.2d 252

**The STATE of Arizona, Appellee,**

v.

**Glenn Scott THORNTON, Appellant.**

**No. 2 CA–CR 717.**

Court of Appeals of Arizona, Division 2.

May 4, 1976.

Rehearing Denied June 9, 1976.

Review Denied June 29, 1976.

Bruce E. Babbitt, Atty. Gen., by Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

Schotland & Stuehringer, by James W. Stuehringer, Tucson, for appellant.

## OPINION

KRUCKER, Judge.

Appellant was convicted of grand theft by false pretenses in violation of A.R.S. §§ 13–661(A)(3) and 13–663(A). Eight prior convictions were proved pursuant to A.R.S. § 13–1649. The trial court denied appellant's motion for judgment of acquittal and thereafter sentenced him to a term of ten to twenty years in the state prison. Appellant moved to vacate the judgment. After a hearing the trial court denied the motion. Appellant now appeals. We affirm.

Appellant asserts four grounds for reversal: (1) Certain statements made by the prosecutor in his summation amounted to comments on appellant's failure to testify; (2) the trial court erred in denying appellant's motion to vacate the judgment because appellant's failure to exercise his right to testify in his own behalf was not the product of a voluntary waiver; (3) appellant was denied the effective assistance of counsel because his trial attorney refused to let him take the stand for reasons having no basis in trial tactics; and (4) the trial court should have granted appellant's motion for judgment of acquittal because the state's evidence failed to corroborate the making of the false pretense as required by A.R.S. § 13–664.

On January 8, 1975, appellant stopped at a Gulf station operated by Arnold Mendez, who had lent money to appellant on several occasions in the past. At that time there was an advertising sign in the station that offered to sell Gulf steel radial tires. Under the terms of the offer, no down payment was required and payments were stretched out over six months. The offer was extended only to holders of Gulf credit cards. Appellant pointed to the sign and told Mendez he had a Gulf card and wished to buy four new tires under the six-month plan.

On January 10, 1975, appellant returned to the station and had Mendez install the

tires. While the tires were being installed, appellant told Mendez his wife had the Gulf card and that he would have her bring it to the station. When the installation was complete, appellant parked his car at the side of the station. After an hour, he drove off. His wife never brought the Gulf card.

The evidence adduced at trial showed that in January of 1975 neither appellant nor his wife had a Gulf credit card.

Detectives Aldridge and Parish of the fugitive detail took appellant into custody. Detective Aldridge testified that at that time appellant:

" . . . stated that he had obtained some tires from a gasoline station. I believe he referred to it as a Gulf station.

Q. Did he indicate to you how he obtained the tires?

A. Yes. He stated that he had gone into the station and purchased the tires, and that he had attempted to use his credit card. He then said that the man at the station refused to take his credit card because his wife had the card. He then said that he made other arrangements, but that he had been unable to make any payments for the tires because he had been out of work."

Detective Parish's version of appellant's statements was virtually identical.

Appellant now contends the trial court erred in denying his motion for judgment of acquittal because the State failed to corroborate the victim's testimony as required by A.R.S. § 13–664(A). That section provides:

"A. Upon a trial for having obtained the signature of a person to a written instrument, or having obtained from a person money, personal property or other valuable thing, with an intent to cheat or defraud another designedly by any false pretense, defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof, is in writing, subscribed by or in the handwriting of defendant, or unless the pretense is proved by the testimony of two witnesses, or that of one witness and corroborating circumstances."

A.R.S. § 13–664(A) is satisfied if the State introduces evidence in addition to and independent of the victim's testimony tending to show that the alleged false pretense was actually made. *State v. Holmes,* 106 Ariz. 202, 472 P.2d 71 (1970). *See, Maseeh v. State,* 46 Ariz. 94, 47 P.2d 423 (1935); *Erickson v. State,* 14 Ariz. 253, 127 P. 754 (1912). Here the alleged false pretense was a statement by appellant that he was the holder of a Gulf credit card, and that his wife had it in her possession. Appellant contends the testimony of Detectives Aldridge and Parish, set forth above, is insufficient corroboration because it does not show that appellant offered Mendez a Gulf credit card. We cannot agree. The corroborating evidence required by A.R.S. § 13–664(A) need not duplicate the victim's testimony in every detail. *See,* e. g., *Maseeh v. State,* supra. We think the detectives' testimony constitutes independent evidence that appellant actually made the alleged false pretense.

In his summation to the jury, the prosecutor stated:

"I am sure in every case, in any case that is tried in the criminal court, there is always going to be some doubt, but the concept is reasonable doubt. Now, we take that to mean that some doubt that you arrive at through your reasoning process, either from some significant defects, some significant gapping [sic] defect in the State's case or from some evidence, some positive evidence that has been presented by the defense. I don't think there is a defect in the State's case which would rise to the level of reasonable doubt when you consider the totality of the evidence which has just been summarized and which had previously been presented. I don't think the defense has come forward with anything which would rise to the level of reasonable doubt.

* * * * * *

One thing that I would ask you to do in considering the summation of Mr. Sherman, in comparing it to what I have just said, I would ask you to measure Mr. Sherman's summation by this test; considering all the evidence in this case and considering also the possible lack of evidence, is the defense able to come up with a reasonable alternative explanation for the events that took place on or about January 10, 1975."

The Fifth and Fourteenth Amendments to the United States Constitution forbid comment by the prosecution on a defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965). However, the Fifth Amendment is violated only if the prosecutor's statement will call the jury's attention to the fact that the defendant has not testified in his own behalf. *State v. Pierson,* 102 Ariz. 90, 425 P.2d 115 (1967). As the court stated in *State v. Acosta,* 101 Ariz. 127, 416 P.2d 560 (1966):

" '* * * It is only objectionable to comment on the failure of defendant personally to testify; a comment that certain facts brought out by the prosecution are uncontradicted is not objectionable. The true test is, was the reference calculated or intended to direct the attention of the jury to the defendant's neglect to avail himself of his right? * * * ' " 101 Ariz. at 129, 416 P.2d at 562.

*See, State v. Flynn,* 109 Ariz. 545, 514 P.2d 466 (1973); *State v. Byrd,* 109 Ariz. 10, 503 P.2d 958 (1972); *State v. Berryman,* 106 Ariz. 290, 475 P.2d 472 (1970).

The prosecutor first stated that the defense failed to present any positive evidence that would engender a reasonable doubt. Far from being calculated to focus the jury's attention on the defendant's failure personally to testify, *see, State v. Rhodes,* 110 Ariz. 237, 517 P.2d 507 (1973), this statement merely amounted to an assertion that the State's evidence was uncontroverted. It is well settled that such assertions are permissible, *State v. Flynn,* supra, even though the defendant was one of the persons whose testimony could have controverted the State's evidence. *State v. Byrd,* supra.

Appellant argues that since he was the only person who could have provided controverting evidence or explanations, *United States v. Handman,* 447 F.2d 853 (7th Cir. 1971) and *Desmond v. United States,* 345 F.2d 225 (1st Cir. 1965) require reversal. Even assuming appellant's premise is correct, we think *Handman* and *Desmond* are inconsistent with *State v. Arredondo,* 111 Ariz. 141, 526 P.2d 163 (1974). In that case our Supreme Court applied the *Acosta* test to uphold a prosecutor's comment that the State's case was uncontradicted where the defendant was the only person who could have contradicted it.

The prosecutor's statement about reasonable alternative explanations for the events of January 10, 1975 is likewise unobjectionable under *Acosta*. The context of the statement shows that the prosecutor was merely asking the jury to see whether *defense counsel* could provide an explanation in his closing argument. The statement was clearly not calculated to draw the jury's attention to *appellant's* failure to testify.

The hearing on appellant's motion to vacate the judgment revealed the following. Sometime before trial appellant and his attorney discussed whether appellant should testify. The attorney advised appellant that his numerous prior felony convictions would put him at a disadvantage if he took the stand. At that time appellant made no final decision concerning whether or not to testify.

On the eve prior to presentation of the defense's case, appellant and his attorney again discussed whether appellant should testify. At that point the attorney felt the case was going badly for the defense and urged appellant to testify despite his prior convictions. Appellant declined to do so because of his priors.

The next morning appellant's attorney asked appellant if he had reconsidered his decision. Appellant said he had not. Later, after the defense witnesses had testified, appellant's attorney told him it was his last chance to change his mind about testifying. Appellant declined to testify and the defense rested.

Near the end of the prosecutor's summation, appellant asked his attorney to put him on the stand. His attorney told him it was too late. At this, appellant said, "Oh, God," and rested his face in his hands. Neither appellant nor his attorney brought to the trial court's attention appellant's wish to testify. Appellant testified at the hearing that he did not ask the trial judge for permission to testify because he was afraid of her contempt powers.

Appellant now contends it was error to deny his motion to vacate because he did not voluntarily waive his right to testify and was denied effective assistance of counsel when his attorney refused to let him testify. We think the motion to vacate was properly denied.

Art. 2 § 24 of the Arizona Constitution guarantees the right of an accused to testify in his own behalf. In *State v. Martin,* 102 Ariz. 142, 426 P.2d 639 (1967), the defendant vociferously demanded the right to testify, and the record showed disagreement between defendant and his attorney on whether he should do so. There was no evidence that defendant later acquiesced in his attorney's determination not to put him on the stand. Under these circumstances, the court held it was reversible error not to allow the defendant to testify. The court noted, however:

"This does not mean that this right cannot be waived. Clearly when the defendant and his counsel come to the conclusion for any reason that it would be better for the defendant not to testify, the defendant cannot later claim with the benefit of hindsight that the decision to keep him off the stand constituted reversible error." 102 Ariz. at 147, 426 P.2d at 644.

The facts in the instant case more closely resemble those in *State v. Tillery,* 107 Ariz. 34, 481 P.2d 271 (1971), *cert. denied,* 404 U.S. 847, 92 S.Ct. 151, 30 L.Ed.2d 84 (1971), than those in *Martin.* In *Tillery* the defendant told his attorney at various times during the trial that he wanted to testify, and at other times that he did not. On the last day of trial, immediately before closing arguments, defendant told his attorney he wished to testify. The attorney relayed this to the trial judge, who, on hearing the attorney's avowal of defendant's vacillation, refused to allow defendant to testify. The Supreme Court held this was not error. It distinguished *Martin* in part on the ground that defendant Tillery maintained silence throughout the trial and failed to ask the trial court to allow him to testify. The court specifically held that since the defendant did not make known his desire to testify during the presentation of the evidence, his request to testify before closing arguments was not timely. *Cf., State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973).

In this case, as in *Tillery,* appellant maintained silence throughout the trial and failed to make a request to testify before the presentation of evidence was concluded. He persisted in his resolve not to testify even against the advice of his attorney. It was only after the true force of the State's case became apparent through the prosecutor's summation that appellant, with the benefit of hindsight, determined to speak up. We think appellant voluntarily waived his right to testify.[1] *State v. Favors,* 92 Ariz. 147, 375 P.2d 260 (1962), in which it was held not to be error to allow the prosecution to reopen its case to prove venue, does not turn on the law of waiver and is not in point.

Because we hold that appellant waived his right to testify, we conclude that

---

1. For that reason, his later failure to speak to the trial judge out of fear of her contempt powers was of no legal consequence.

appellant was not denied the effective assistance of counsel.

We have reviewed the record and find no error. A.R.S. § 13-1715.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concurring.